## AINSWORTH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

1. MASTER AND SERVANT (§ 278*)—DEATH OF SERVANT—ACTION FOR—EVIDENCE.
   In an action for the death of a railroad employé, evidence *held* sufficient to go to the jury that the death was caused by the negligence of the defendant in failing to provide a safe place to work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 278*)—DEATH OF SERVANT—NEGLIGENCE OF MASTER.
   Where a railroad company was negligent in failing to provide a safe place for its servant to work whereby he tripped, fell onto its tracks, and was killed, a general showing of the improper conditions negligently maintained which caused his death will support an action therefor, though the particular agency which caused him to trip cannot be shown.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972; Dec. Dig. § 278.*]

   Smith, P. J., and Lyon, J., dissenting.

Appeal from Trial Term, Albany County.

Action by Effie M. Ainsworth, as administratrix, etc., against the New York Central & Hudson River Railroad Company. From a judgment upon the dismissal of plaintiff's complaint at the close of her evidence, she appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Richard O. Bassett, of Albany, for appellant.
Visscher, Whalen & Austin, of Albany, for respondent.

PER CURIAM. [1, 2] From the evidence the jury might have found that the speed limit in the yard was six miles per hour, and that the car causing the intestate's death was proceeding at an excessive speed, that the switch stand was not lighted, and that there were knuckles and other obstructions in the six foot. It is not necessary for the plaintiff to prove whether the intestate tripped over a part of the switch stand, the rod, or obstructions in the six foot. It is enough, if it appears, that there were obstructions, and that by reason of the excessive speed the failure to light the switch stand, and the other conditions existing, the intestate's death was caused by the negligence of the defendant. The judgment should therefore be reversed and a new trial granted, with costs to appellant to abide the event.

LYON, J. (dissenting). In defendant's yard at West Albany, in April, 1910, were several systems of tracks, for the purpose of making up trains, known as pockets, consisting of the main or stem track, running easterly and westerly, and of switches or branch tracks, which as to pocket No. 2, running southeasterly, left the stem track every 80 feet or thereabouts. On the northerly side of pocket No. 2, and between the stem tracks of pockets Nos. 1 and 2, was a space

of about 10 feet in width, known as the base, or more commonly as the "six foot," along which it was necessary that the pin puller should pass in his work of manipulating the levers which pulled the coupling pins, and thereby released the cars, and allowed them to pass by their own momentum into the various branches from the stem track. At the point where each branch left the stem track was a switching device supported upon two long ties, which passed underneath the stem track, and extended northerly into the base or "six foot," a distance of about 5½ feet. Towards the end of the two long ties stood an iron switch stand about two and a half or three feet in height, upon the top of which was a target and pin for holding a lamp, which, when lighted at night, would indicate the location of the switch stand as well as whether the switch was open or closed. The clear space between the switch stand and the northerly rail of the stem track in pocket No. 2 was about three feet. On the evening of April 26, 1910, at about 8 o'clock, plaintiff's intestate, whose work as conductor and pin puller had been mainly confined to pocket No. 1, was engaged in that capacity in pocket No. 2, and while shifting a freight car from the stem track to branch track No. 7 was killed by being run over by a refrigerator car, which was the next car nearer the engine, and the one from which deceased had just uncoupled the freight car. When last seen alive, plaintiff's intestate was passing branch 5, running alongside the refrigerator car. At or near branch 4 deceased, with his lantern, had given the engineer the signal to stop, which the engineer had obeyed, but, after the locomotive stopped, the refrigerator car passed on sufficiently far to take up the slack of the train, when it came to a standstill. One of the witnesses testified that he saw the lantern of deceased pass out of sight around the easterly end of the refrigerator car while the slack was being taken up. The lantern was found broken lying in the base or "six foot." There was no eyewitness of the occurrence which caused the death of plaintiff's intestate, but he was found between the rails of the stem track under the refrigerator car, about midway of the car, and about 15 feet east of switch No. 5, and so badly injured from the front truck of the car having passed over him that he soon died. Certain witnesses testified that the ties or supporters which supported the switch and switch stand were two or three inches higher than the ground between the switch stand and the northerly rail of the stem track, and also that at times knuckles, coupling pins, drawbars, and chunks of coal were allowed to accumulate in the base or "six foot," making it an unsafe place in which to work, and plaintiff contends that it was stumbling over one of these in the darkness which caused plaintiff's intestate to fall underneath the car. The night was dark. Aside from the lantern which deceased carried, the place where deceased was at work was lighted by two electric lights, one of which was maintained by the city on the bridge, about 200 feet westerly from branch 5 in No. 2 pocket, and the other was maintained by the defendant company and was located near the roundhouse in defendant's yard, about 100 feet southeasterly from branch 5. There were no lights upon any of the eight switch points in pocket No. 2,

and there had been lights on only a portion of the switch points in pocket No. 1·where deceased had been accustomed to work.

In granting the motion for a nonsuit the learned trial judge said:

"The weakness of your case is that you are here without any evidence as to the manner in which this accident occurred. All that we know is that Ainsworth was under the car and was run over. There is no evidence as to what he was doing at that particular time or the particular fact or circumstance which brought him in that unfortunate position. Of course, it is possible to guess or conjecture that he stumbled over the switch stand. It is possible to guess or conjecture that he stumbled over a knuckle or a drawbar or a clinker or some other obstruction which the evidence, as you have introduced it, shows was there. But he could not have done both. And the very fact that you have put in evidence the claim that he stumbled either over the switch stand or over a projecting knuckle or a draw pin or some other obstruction shows the uncertainty of the case, and shows, if it goes to the jury, it must be upon pure conjecture as to just what he did stumble over, if he stumbled over anything. He may have stumbled. He may not have stumbled. It is easy to see, it is easy to conjecture how in various ways he may have got in front of the car and gotten under the car. But the question in my mind is not whether there may be some possible ground of negligence which could be submitted to the jury, but there is absolutely no evidence whatever as to what it was that caused this man to get under the car. We are all in the dark on that point. The case is absolutely free from evidence which would exonerate him or attempt to exonerate him from contributory negligence."

Plainly the position of the body of plaintiff's intestate, when found, would, as conceded by plaintiff's attorney, preclude the probability of his having fallen over the switch stand.

I think there is no merit in the claim of negligence, in that the cars were run at an excessive rate of speed. Intestate as conductor had the power to stop the cars at any time. There is no evidence that any speed rule existed or was violated. The speed notice referred to was located outside the yard limits and apparently applied to the operating of trains only.

Notwithstanding the suggestion made by the learned trial justice in his statement above quoted, there is not in my opinion satisfactory evidence that upon the night in question there was any obstruction in the base or "six foot" over which the intestate stumbled and fell. Of the four witnesses called by the plaintiff, two, Smith and McNally, testified that there were no knuckles, drawbars, coal, or other débris in this "six foot" on the night of the accident. While McCluskie, the discharged employé, who was evidently very much biased, said there were always such obstructions there, yet he testified:

"Q. Did you see anything in the 'six foot' in the vicinity of 5 switch at the time of the accident? A. Nothing out of the way at that time. Q. It was in proper condition there so far as that was concerned, it was in the usual condition, was it, at 5 switch? A. I won't say the usual condition, because I very often had cause to make complaint about the bad condition of 2 pocket to the section foreman."

The witness Mohan testified that prior to April 26th he observed the condition of the "six foot" of No. 2 pocket, and that from March to April 26th he had seen broken knuckles, pins, and other obstructions in this "six foot," as well as in others, "and this was the con-

dition, so far as I know, on the night that Mr. Ainsworth was killed." The witness testified that he arrived there that night about 20 minutes after Ainsworth was killed, but he does not testify that he examined this "six foot" that night, and, in fact, his statement as to its condition, "so far as I know," implies that he had no personal knowledge of its condition on the occasion in question.

Plaintiff's attorney seems to have concluded that the evidence did not warrant the conclusion that deceased fell over a knuckle bar or drawhead, as following the close of the evidence this conversation took place between the court and plaintiff's attorney:

"The Court: If he was between the cars, then you don't claim that he stumbled over the switch stand?

"Attorney: No; I don't claim that now. It was impossible for me to tell in the development of the case.

"The Court: Now, you are claiming that he stumbled over the switch supporter?

"Attorney: Yes; over the switch supporter.

"The Court: By the switch supporter you include the rod that runs between the two rails?

"Attorney: The whole thing, and that it was negligence to maintain it in the manner in which it was maintained, and that it was negligence not to have a light there upon that particular switch."

I think there is no satisfactory proof of the cause of the accident, and that the judgment of the trial court should be affirmed.

SMITH, P. J., concurs.